UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re | Chapter 13 |
| Ashley Nichole Moss,<br>          Debtor. | Case No. 11-24632-svk |

| | |
|---|---|
| Ashley Nichole Moss,<br>          Plaintiff, | |
| v. | Adv. Proc. No. 11-2803 |
| Sallie Mae, Inc. on behalf of USA Funding,<br>          Defendant. | |

MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT

In this action, Ashley Moss (the "Debtor") seeks damages for alleged violations of the automatic stay and anti-discrimination provisions of the Bankruptcy Code by Sallie Mae, Inc. ("Sallie Mae"), arising out of Sallie Mae's refusal to issue a student loan to the Debtor. Sallie Mae filed an Answer and Motion for Summary Judgment. The Debtor filed a Response, and Sallie Mae filed a Reply. After consideration of the parties' arguments, the Court determines that Sallie Mae's Motion for Summary Judgment should be granted.

I. Facts

The facts are not in dispute. The Debtor filed a Chapter 13 petition on April 1, 2011. Sallie Mae, on behalf of its guarantor, the United Student Aid Funds, filed a claim in the amount of $7,295.94. The claim arose from the Debtor's default on Federal Family Education Loan Program student loans. The Court confirmed the Debtor's Chapter 13 plan on June 13, 2011.

The plan provides for a 1% dividend to unsecured creditors, and, despite the fact that student loans generally are not dischargeable in bankruptcy, the Debtor's plan provided no special treatment for the student loan claim.

Between August 29, 2011 and September 6, 2011, the Debtor tried to obtain new student loans from Sallie Mae. Sallie Mae advised the Debtor and her attorney that she was not eligible for new guaranteed student loans. The Debtor's counsel contacted Sallie Mae and requested a letter explaining why the Debtor was ineligible. On September 7, 2011, Sallie Mae responded with a letter that states:

> After researching your account and our company policy, we are sorry to inform you that you are not eligible for additional Title IV aid. Your account was previously in default before you filed bankruptcy. You must cure the default status before you are eligible to receive additional aid. Your account must been [sic] credited with six consecutive monthly payments, in order to make you eligible for reinstatement of Title IV eligibility and additional financial aid should you meet all other requirements. In order to remain eligible for future Title IV aid, you must then continue your consecutive monthly payments. Should you miss a payment or your payments cease, your eligibility is terminated and you will not be eligible for any additional Title IV aid until the defaulted loan(s) is paid in full.

On November 7, 2011, the Debtor filed a Complaint against Sallie Mae, alleging that Sallie Mae's policy as described in the letter violates the automatic stay of 11 U.S.C. § 362(a)(6) and the anti-discrimination provisions of 11 U.S.C. § 525(c)(1). The Debtor sought actual and punitive damages.

## II. Analysis

### A. Jurisdiction

The Court has the authority to enter a final Order in this adversary proceeding under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1). This adversary proceeding is a core proceeding "arising under title 11" within the meaning of 28 U.S.C. §§ 157(a) and 157(b)(1) because it

2

Case 11-02803-svk    Doc 11    Filed 04/18/12    Page 2 of 9

involves causes of action created or determined by the Bankruptcy Code, namely 11 U.S.C. §§ 362(k)(1) and 525(c). *See In re Storozhenko*, 459 B.R. 697 (Bankr. E.D. Mich. 2011) (stay violation proceeding was core proceeding arising under the Bankruptcy Code).

## B. Violation of the Stay

The Debtor argues that Sallie Mae's requirement that she cure her default status before she can receive a new student loan effectively coerces the Debtor into paying pre-petition debt. The Debtor also contends that the debt is already provided for in her Chapter 13 plan, and that Sallie Mae's tactics are prohibiting her from attaining the fresh start that is at the core of bankruptcy law.

The latter argument borders on frivolous, since the Debtor's plan proposes a 1% dividend on a nondischargeable debt. Under § 523(a)(8) of the Bankruptcy Code, the Debtor's student loan obligation will not be included in her bankruptcy discharge unless she establishes that repayment would create an undue hardship on the Debtor or on her dependents. Proving undue hardship requires proof of a dire financial condition that is likely to exist for a significant portion of the repayment period, including evidence of exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time. *Goulet v. Educ. Credit Mgmt. Corp.*, 284 F.3d 773, 779 (7th Cir. 2002). Although the burden of repaying a student loan may indeed interfere with the Debtor's fresh start, a competing policy interest is at work. As the Second Circuit explained: "Congress enacted § 523(a)(8) because there was evidence of an increasing abuse of the bankruptcy process that threatened the viability of educational loan programs and harm to future students as well as taxpayers. Congress recognized that this is an instance where a creditor's interest in receiving full payment of the debt outweighs the debtor's interest in a fresh start." *Cazenovia College v. Renshaw (In re Renshaw)*, 222 F.3d 82, 87 (2d

3

Cir. 2000). Absent a showing of undue hardship by the student-debtor, the policy of requiring repayment of student loans trumps the policy of providing debtors with a fresh start. The Debtor here has not sought to demonstrate that repayment of the student loan would be an undue hardship, nor has she provided a plan to cure the default on her student loan and repay it. *See, e.g*, *In re Johnson*, 446 B.R. 921 (Bankr. E.D. Wis. 2011) (Chapter 13 debtor's student loans could be separately classified and paid in full without unfairly discriminating against other unsecured creditors). Instead, she proposes to treat her pre-petition student loan obligation as a general unsecured claim and pay no more than 1% of the amount due over 60 months. Sallie Mae's policy of refusing to grant another student loan under these circumstances does not improperly interfere with the Debtor's fresh start, and the Debtor's claim in this regard must be denied.

The Debtor alternatively argues that Sallie Mae's requiring payment of her pre-petition loan as a condition of obtaining a post-petition loan violates the automatic stay. This claim gains more traction. Under § 362(a)(6) of the Bankruptcy Code, the filing of a bankruptcy petition operates as an automatic stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." The automatic stay is one of the fundamental protections that the Bankruptcy Code affords to debtors. *Jamo v. Katahdin Federal Credit Union (In re Jamo)*, 283 F.3d 392, 398 (1st Cir. 2002). However, the "respite provided by § 362 is not from [mere] communication with creditors, but from the threat of immediate action by creditors, such as a foreclosure or a lawsuit." *In re Duke*, 79 F.3d 43, 45 (7th Cir. 1996) (citing *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 86 (3d Cir. 1988) (internal quotations marks omitted). Agreeing with a majority of bankruptcy courts, *Duke* held that a polite letter sent to a debtor offering to reaffirm a pre-petition debt does not violate § 362(a)(6).

The Debtor claims that Sallie Mae went one step further by conditioning the grant of post-petition loans on the payment of her pre-petition loans.

This is similar to *Jamo v. Katahdin Federal Credit Union*, where the First Circuit held that a creditor may discuss and negotiate terms to reaffirm unsecured debt as a condition of reaffirmation of secured debt without violating the automatic stay as long as the creditor refrains from coercion and harassment. *Jamo*, 283 F.3d at 402. There is no argument here that Sallie Mae's conduct was harassing; rather, the Debtor deems the pressure to pay the pre-petition student loan as a condition of receiving a post-petition student loan coercive. In determining whether a creditor's conduct seeking repayment of pre-petition debt is unduly coercive, courts have analyzed whether the creditor's conduct (1) could reasonably be expected to have a significant impact on the debtor's determination as to whether to repay, and (2) is contrary to what a reasonable person would consider to be fair under the circumstances. *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 (6th Cir. 2000) (citing *In re Briggs*, 143 B.R. 438, 453 (Bankr. E.D. Mich.1992)). In *Briggs*, a credit union required a debtor to reaffirm an unsecured line of credit if the debtor wanted to reaffirm the debt secured by his mobile home. The debtor's attorney refused to sign the reaffirmation agreement on the unsecured loan. The debtor signed both reaffirmation agreements, but the credit union refused to file them, canceled the debtor's membership in the credit union, and sought relief from stay on the mobile home. The debtor sued the credit union for violation of the stay and discrimination under § 525. The bankruptcy court thoroughly analyzed the credit union's conduct to determine whether it was coercive and thus violative of the automatic stay. Although taking issue with the credit union's refusal to file the mobile home reaffirmation agreement, the court concluded that neither termination of the

debtor's membership in the credit union nor the credit union's requirement that the debtor reaffirm the unsecured loan as a price for reaffirming the secured home loan was coercive:

> While the Code emphasizes that a reaffirmation agreement must be 'voluntary' on the debtor's part, *see* §§ 524(c) and (d), it is also clear that a creditor need not consent to such an agreement unless the terms are acceptable to it. *See In re Bell*, 700 F.2d 1053, 1056 (6th Cir. 1983) ("[Section] 524(c) facially contemplates that the creditor, *for whatever reason*, may reject any and all tendered reaffirmation offers . . . ." (emphasis added)). Thus while linking the two loans in this fashion would likely influence a reasonable person's decision regarding repayment of the line-of-credit indebtedness, I see nothing unfair about it, and I accordingly hold that the Credit Union's policy did not violate § 362(a)(6).

*Briggs*, 143 B.R. at 460. Using the same analysis here, Sallie Mae's conduct in informing the Debtor that new student loans were conditioned on the payment of pre-petition student loans did not violate the automatic stay. Sallie Mae's letter was requested by the Debtor's attorney and merely explains the law governing federally-guaranteed student loans. Title 20 U.S.C. § 1091(a)(3) provides that in order to receive any grant, loan or work assistance, a student must "not . . . be in default on any loan from a student loan fund at any institution . . . or a loan made, insured, or guaranteed by the Secretary under this title for attendance at any institution." Corresponding regulations indicate that a student in default status may receive new loans only if the student makes arrangements, satisfactory to the holder of the loan and in accordance with applicable regulations, to repay the loan balance, and the student makes at least six consecutive monthly payments under those arrangements. 34 C.F.R. § 668.35. Since Congress has required that government-guaranteed student loans should not be issued to a student who has defaulted on prior loans, unless the student makes six payments under an agreeable arrangement, it is not unfair for Sallie Mae to explain this requirement to the Debtor, even while she is protected by the automatic stay. Thus, it does not violate the automatic stay for Sallie Mae to write a polite explanatory letter to the Debtor any more than it violates the automatic stay for a creditor to

6

politely offer a reaffirmation agreement or even condition reaffirmation of a secured debt on the reaffirmation of an unsecured debt. While the effect of the creditors' conduct may be to obtain payment of pre-petition debt, it is not unfair under applicable law and therefore not coercive. *See also Colon v. Professional Recoveries (In re Colon)*, 212 B.R. 23, 25 (Bankr. D.P.R. 1997) ("The denial of student aid to a bankruptcy student based on a pre-petition debt, does not violate the automatic stay."); *but cf. Pratt v. GMAC (In re Pratt)*, 462 F.3d 14 (1st Cir. 2006) (creditor's refusal to release valueless lien on junk car was coercive and violated the discharge injunction). Accordingly, Sallie Mae's Motion for Summary Judgment seeking dismissal of the Debtor's claims that Sallie Mae violated the automatic stay should be granted.

### C. Violation of Anti-Discrimination Provisions of § 525(c)

The Debtor contends that Sallie Mae's conduct violates § 525(c) of the Bankruptcy Code. That section states in pertinent part:

> A governmental unit that operates a student grant or loan program and a person engaged in a business that includes the making of loans guaranteed or insured under a student loan program may not deny a student grant, loan, loan guarantee, or loan insurance to a person that is or has been a debtor under this title . . . because the debtor or bankrupt is or has been a debtor under this title . . . has been insolvent before the commencement of a case under this title or during the pendency of the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

The Debtor fails to explain why Sallie Mae's letter explaining the legal requirements of obtaining another student loan violates this provision. Sallie Mae declined the Debtor's request for a new student loan because the Debtor was in default status on her prior loan, not due to the Debtor's bankruptcy, insolvency or discharge of a dischargeable debt. As noted above, the Debtor filed a Chapter 13 case and proposed to pay 1% on her student loan. She did not file an adversary proceeding seeking a hardship discharge of her student loan debt. This case would be

7

completely different if the Debtor were operating under a confirmed plan that cured her default and paid 100% on her pre-petition student loan, or if she had received an undue hardship discharge for that loan in a prior bankruptcy case. For example, if the Debtor had obtained confirmation of such a plan, and was making all the necessary payments, § 525(c)(1) might well operate to prevent Sallie Mae from denying the Debtor an additional loan based on her status as a Chapter 13 debtor. But where the Debtor provides only a 1% dividend on her defaulted student loan for a 60-month period (and it is not clear from the terms of her plan whether any payments whatsoever have yet been made to the unsecured creditors), Sallie Mae is not discriminating against the Debtor by declining her request for another student loan.

The Debtor has not cited a single case in which a court found discrimination in the denial of a student loan under circumstances similar to those here. The Debtor relies on *Colon v. Professional Recoveries (In re Colon),* 212 B.R. 23 (Bankr. D.P.R. 1997). However, that case preceded the effective date of § 525(c). Admittedly, the student loan creditor in *Colon* conceded that if § 525(c) applied, it would have been required to make the debtor a new loan. But the Chapter 13 debtor there had proposed a 100% plan that would have cured the default to the student loan creditor. In contrast, the Debtor here has not proposed to cure the default on her pre-petition student loan, but rather to pay a *de minimis* dividend of 1%. Unquestionably this case is distinguishable from *Colon*, and the student loan creditor's concession in that case does not support the Debtor's argument.

Very few cases construe § 525(c), but the legislative history of the section confirms that a prior bankruptcy discharge should not be the basis of denial of a student loan:

> This section clarifies the antidiscrimination provisions of the Bankruptcy Code to ensure that applicants for student loans or grants are not denied those benefits due to a prior bankruptcy. The section overrules *In re Goldrich*, 771 F.2d 28 (2nd Cir. 1985), which gave an unduly narrow interpretation to Code section 525. Like §

8

> 525 itself, this section is not meant to limit in any way other situations in which
> discrimination should be prohibited. Under this section, as under § 525 generally,
> a debtor should not be treated differently based solely on the fact that the debtor
> once owed a student loan which was not paid because it was discharged; the
> debtor should be treated the same as if the prior student loan had never existed.

H.R. 835, 103rd Cong. § 313 (1994). Nothing in the legislative history, any case cited by the Debtor, or any authority uncovered in the Court's research supports the notion that § 525(c) applies to prevent the denial of a student loan to a debtor with a nondischargeable student loan in default status. As in *Colon*, if the Debtor had proposed in her Chapter 13 plan to cure the default and pay 100% of her pre-petition student loan debt, Sallie Mae's denial of her request for another student loan probably would violate § 525(c). However, since her plan does not propose to cure her default status, Sallie Mae is entitled to rely on 20 U.S.C. § 1091(a)(3) in denying a new loan to the Debtor. With this statutory defense, and since Sallie Mae is not basing the denial on the Debtor's bankruptcy, insolvency or discharge of a prior student loan, Sallie Mae's conduct in this case does not violate § 525 of the Bankruptcy Code.

### III. Conclusion

For the foregoing reasons, Sallie Mae's Motion for Summary Judgment is granted, and the Debtor's Complaint is dismissed. The Court will enter a separate Order.

Dated: April 18, 2012

By the Court:

*Susan Kelley*
Susan V. Kelley
U.S. Bankruptcy Judge